The contract is 2-18-0124, the people of the state of Illinois plaintiff appellate, Mr. Lawrence J. Lenz, defendant of Kevin. Arguing on behalf of the defendant of Kevin, Mr. Paul P. Gresham. Arguing on behalf of the plaintiff appellate, Ms. Kristen M. Gill. Mr. Gresham. Yes. Good morning. Good morning. I'm pleased to forward the counsel. My name is Paul M. Gresham. I want to introduce myself and I represent Law and Science. Mr. Lenz brings to you all the case of first impression in a couple of cell respects. He appeals his conviction for violation of driving under the influence of drugs, an alleged violation of 11-501A6. And it's based on a urine analysis that revealed the presence of cannabis. It's a case of first impression, at least according to our research, in that Mr. Lenz challenges the results of his urine analysis based on the state's failure to comply with the Illinois State Police rules and regulations for the collection and testing of urine found at section 1286.33. And you're challenging the fact that some urine leaked out of the bottle and into the bag. Yes. Yes, ma'am. The breach of the rules that Mr. Lenz raises is the rule found in subparagraph A, D, and E as well. But A basically stands for the requirement that a sample of urine shall be collected in the mariner to ensure the integrity of the sample. And Mr. Lenz's position is that the integrity was compromised by the breach in the seal. How is that possible? You agree substantial compliance is required, correct? I do. This is a metabolite. It's not a – it's not a – for example, in Hall, we lacked the competency to determine whether it was substantial compliance because it involved the lack of a preservative. This is different, correct? This is a metabolite. Your theory is that somebody else's urine got into the container? Our position is that – You understand the difference, correct? I do. I do understand the difference. And the – You think it compromised the quality of the urine because it leaked out of the bottle. It's our position that some contaminant may have been present on the outside of the bottle or the inside of the bag. The rules require that the sample shall maintain its integrity, that it shall be collected in clean, dry containers, and that the containers shall be closed. There was a breach in the seal, and therefore, the urine that escaped may have touched adhesive. Some may have fallen back in. Some may have escaped. It touched the outside of the container, and it touched the inside of the bag. There's no evidence that the inside of the bag was clean and dry, and it's possible there was contaminants on the outside of the bottle. In Hall, again, a distinction. There was an expert witness who provided an opinion that the lack of a preservative would have affected the results, correct? Yes. That's not the case here. That isn't the case here. But similar to Hall, in Hall, Justice McClaren wrote that I suppose you could find substantial compliance when the rule requires an anticoagulant and a preservative, and the State got half right. But he ultimately, writing for the opinion, indicated that you can't really have substantial compliance with the requirement that there be a preservative when there is no preservative. And so our position here is the same, that this is a similar rule. The rule requires that the integrity of the sample be uncompromised, and that's the only way that the result can be reliable for both to protect the defendant and to protect the court. The integrity is either maintained or it's not. And our position is that it wasn't, and it was obviously not because some of the sample leaked. We know it was a 120-millimeter container. We don't know how much from the record, how much was originally placed into the container. Did they say they took it from the Ziploc bag and put it back in the container? I didn't see that in the record. The reasonable inference I took from the record, reading it, is that the sample was collected. Actually, the defendant held the container with his bare hands after being present in a booking room and potentially a holding cell. He filled the container to some extent. It was a 120-millimeter container. The officers then screwed the top on, covered the seal with tape, marked it, put it in an evidence bag, and sent it off to the state police. The state police got it about seven days later. I'm sorry for interrupting, Judge, and it wasn't tested for another three and a half months or so. Okay. The lab analyst who did the test, Christine Kau, testified that the leak could not have affected the testing, correct? My recall is that she didn't testify it could not. She testified that it did not, and it was a conclusion, and there was no basis given for the conclusion. And there was no other testimony to rebut that, correct? There was no other testimony to rebut it. Can we talk about the Naperville case and how that may have affected your client's trial? Yes, sir. The Naperville evidence? Yes, sir. You didn't raise that issue at trial, did you? And I was in trial counsel, but the defendant did not raise it. Isn't that issue forfeited? The trial counsel did object to the admission of certain evidence. Out-of-court statements that were offered to prove the truth of the matter asserted were objected to. For example, Officer Filer testified that he was dispatched to the scene of the hit-and-run accident. She objected to that. She objected when the toxicologist, I'm sorry, when Officer Mavick testified to certain out-of-court statements she had received. Is an objection enough to preserve the issue for appeal? No, it has to also be raised in post-trial motion unless it's alleged to be plain error. Her post-trial motion on behalf of the defendant has some covering language. She does allege due process violation, which is generally correct. And then there's some blanket language at the very end where she indicates that for various reasons, and during the trial, and every error may appear from the official transcript of proceedings, the defendant prays before they gain the time and the guilt to be entered. It appears the motion was written without the benefit of transcripts, and the issue wasn't specifically raised, but it's our position that it was covered in some of the general language contained in the post-trial motion. Notwithstanding forfeiture, isn't the Naperville evidence relevant to the issue of your client's impairment at the time? It is. So I agree that evidence of how he drove 15 minutes earlier is relevant to whether or not his ability to safely operate a motor vehicle. And his voicemail where he acknowledges the other crash and leaving the scene because he has patients waiting for him in his office? That's addressing a slightly different issue. So that's addressing proof of other allegations that have to do with charges that arose out of Naperville as opposed to the Warrenville charge of driving under the influence of drugs. Well, it's also relevant, isn't it, to his level of impairment, the statement that he makes that he left the scene because he's got other patients waiting? Isn't that an indication of somebody who's not thinking correctly? And he actually says he thinks he hurt someone at that scene. He quickly changes that to I hit property, but I understand. It's pretty bizarre, basically. And when somebody is speaking and acting in a bizarre way, that does suggest impairment, does it not? It does, except that the voicemail was left 10 days after the incident. So if he was impaired on November 3rd, I don't think he was still similarly impaired when he left that message at Batteries Plus. Was he a friend of the guy at Batteries Plus? My understanding from the record is that he was a customer of Batteries Plus. I think a reasonable inference is that he mistakenly left the message there when he meant to leave for someone else. Oh, okay. I was going to say he must have really bonded with the man at Batteries Plus. So getting back to your question, Your Honor, from earlier, it looks like the chemist must have looked at the notes, and the notes indicated that sometime during the 3 1⁄2 months between the time Mr. Glenn deposited a sample in the cup and the time when she retrieved it on February 22nd, I think it was 2016, to test it, apparently the sample had leaked and someone had changed the bag out. So it appears, again, my inference from the record is that the state police toxicologist, Christina Tava, who testified, opened up a dry bag with a now-secured top to the container, but sometime prior to that it had leaked to some unknown amount. The drug recognition expert did not testify that the defendant was under the influence of cannabis, correct? In fact, she testified he wasn't. He was not. He was not. That he was under the influence of a combination of other types of drugs. Which makes the case extremely unusual. And so I pointed out in the writing that this test result is critical to the finding of guilt in these six, of course, but especially here because there's absolutely no other evidence, direct or circumstantial, that Mr. Glenn possessed cannabis, either on his person or in his car, or had smoked cannabis. There's two officers that testified that had contact with him on the street. There's no odor of cannabis coming from his person. They didn't believe he was under the influence of cannabis. Does the statute require, is it your position the statute requires that the state has to prove the influence of a specific drug, or is it just drugs or a combination of drugs, or a combination of drugs and alcohol? It's an interesting question. Well, the statute does not require the specific. It doesn't. Did you look at other jurisdictions, for example, other states that have similar provisions? I haven't found, my research didn't find any guidance on the issue, other than the fact that every case that we did find had a, quote, unquote, drug addiction. So what's unusual about the A4 charge here is that the drug recognition expert's testimony is that based on her observations, this man must have consumed drugs from these two broad categories of drugs. Yet there's, again, no direct or circumstantial evidence that shows that the defendant ever ingested a drug from those broad categories that the expert hypothesized he did. An opinion, in this case from an expert, you stipulated to her qualification, correct? Yes, sir. Because it's admissible on the ultimate issue, would you agree? Yes, sir. I do agree. And the trial court accepted, although he had problems with her demeanor, he accepted her opinion. Yes, sir. Have you read People v. Goldschmidt? Yes. Yes, I have. And you don't even have to be an expert necessarily in order to render that opinion, but here you have a drug recognition expert, the trial court accepted that opinion, and that opinion found support in circumstantial evidence, the impairment that the defendant's performance on testing, the video, he could not understand simple instructions. So how do we say that that evidence is insufficient in taking the evidence in light most favorable to the State?  And with regard to Gochman, I would submit that the weight that would be afforded to an opinion would be dependent on the person's qualifications. And here, to the States, to support the State, we've got a drug recognition expert. However, there's not a reported case that my research found. You rely on work, then. Yes. If I may, one more time. There's not a case that I found where an expert or any officer rendering an opinion that a person is under the influence of a drug, that that opinion is not supported by some other direct or circumstantial evidence that that person actually ingested a drug at issue. So in cases, you'll find that the subject has admitted to smoking marijuana. The drug at issue is that my point was this. The statute does not require a specific drug. And obviously, in this case, the testing was not done for the specific categories that the officer, the drug recognition expert, testified to. Does that preclude a finding of guilt? Well, that's the point. Does the State have to prove, beyond a reasonable doubt, that a specific drug was in the defendant's system? Or does the State have to prove, beyond a reasonable doubt, that it was not alcohol, but some combination of some drug? Because we're the up – there's clearly impairment here. The State just can't say exactly what drug or what combination of drugs it is beyond that opinion from Mavit. I think what Mr. Morishi was saying is that every other case, there was some proof that there was some drug in the system, correct? Something was ingested. There was some other direct or circumstantial evidence. Either direct evidence that the subject admitted he consumed the drug, a certain drug, was impaired by the certain drug, or was found in possession of the drug, or he had a blood or urine test that supported the opinion. I mean, we had a case recently, I think, where the guy had track marks and maybe even powder in his nose. So you're saying something like that. What I'm also saying is that our drug recognition expert admitted in her testimony that she's not qualified to determine if there's some other psychiatric, psychological, mental illness basis for the observations that she made during her testing and the other officers made during theirs. In other words, opinion evidence is circumstantial, Your Honor. It requires an inference to be drawn from the observations. There has to be a supporting set of facts. Is that your position? Yes. But the inference that's drawn from the observations of the field test might be that the person is under the influence of alcohol or under the influence of drugs. And this very case actually illustrates how tenuous that circumstantial opinion evidence can be. Officer Filer, when he came in first contact with Mr. Lenz, he noticed an odor of alcohol. He asked Mr. Lenz if he had been drinking. He said he had a couple of beers in his car. They found four empty beer bottles with a little residue left in them in the car. And he arrested the defendant for driving under the influence of alcohol, only to later find out when he took a breath test that he was wrong. He admitted he was wrong. Had Mr. Lenz not gone back to the Warrenville Police Department and submitted to a breath test, I submit that there would have been a bench trial or a jury trial on a charge of driving under the influence of alcohol. And Mr. Lenz very well may have lost because a tryer of fact might have believed that Mr. Lenz was under the influence of alcohol based on that evidence. Because he was clearly impaired. He was impaired either by alcohol, by drugs, or there's some other reason for those observations that you could have made by watching the videotape where the officers made on the street or Officer Mabin made back at the station. But he never said that there was something else that was impairing him or causing him the inability to do those tests. And Your Honor, I understand that. I submit there may be times where a person doesn't even recognize that he has a physical issue or doesn't recognize that he has a mental issue or a psychiatric issue. I mean, he recognized that he had the urination problem because he was cold. He was not unwilling to participate. He did say, this happened, I was cold. He could have said something. He didn't have to say something. And he did not have to prove he was not or he was mentally ill. But the fact remains, this record doesn't show anything about testing, other testing of the urine sample that could have been done, or any other evidence that could have established that he had some other problem. Yes, ma'am. And what I would point out in that regard is that the offense occurred on November 3rd, I think it was, 2015. The state, if you include all the state agents, were aware of Officer Mabbitt's opinion that he was under the influence of CNS depressants and narcotic analgesics and submitted the urine test to the state police laboratory for analysis, but never asked them to analyze the urine for those drugs to support or validate the opinion. Instead, it was analyzed for cocaine and cannabis. There was no cocaine found. There was cannabis found, which we can test. And they could have tested it but didn't. Could the defendant have retested it? Yes. I believe he could have requested the court to order a retest, and the rules allow for the urine fact mandate that the urine is safe for six months. Now he's to be here. Also here, I would point out that the state didn't ask to draw blood from the defendant. And if they had drawn blood, they would have been able to determine what was impacting him at the time the blood was drawn, whether or not there was CNS depressants in his body or narcotic analgesics in his blood getting to his brain and actually impairing him the way Officer Mabbitt believes he did. Your time is up, but one more question, though, before you sit down. The Naperville case was never up for trial, correct? It wasn't, but he sure went to trial because the judge found him guilty. So it's our position that jeopardy attached and that it was so patently unfair that it should be downgraded first. Your position is that the witnesses who testified that were sworn were called on the Naperville case? They were called on the Warrenville case, correct? That's my submission, Judge. I'm just saying that he was found guilty. I understand your position. It's unusual. Okay. Thank you, sir. Your time has expired. Thank you. Ms. Schwinn. May it please the Court, good morning. My name is Kristen Schwinn. I'm here on behalf of the people in the case of people B-lines. Would Your Honor's care if I just pick up on the issue that we were discussing or would Your Honor prefer to start at a different issue? Well, first, how about the substantial compliance issue? Sure. I believe that as the Court found that both it was a de minimis result such that there was a small leak. We keep talking about a leak, but the testimony was it was a small leak. The officers put a clear adhesive. They tightened the cup. They put a clear adhesive around the container and then red evidence tape on top of that. The testimony is that there was a small leak, that the clear seal was still intact, not to mention that at the time it was received, the evidence bag was still sealed shut. As the Court properly found, any sort of small leak was de minimis, especially in light of the fact that the forensic scientists testified that any leak would not have affected the integrity of the result, which is for substantial compliance, what the Court really looks to in determining whether or not the compliance is reliable for the statute. The statute doesn't talk about a little leak or a big leak. No, Your Honor, you're correct. They don't. What they do is the Administrative Code talks about four provisions, the dignity of the individual, that there's a clear, dry container, that there's no preservative for the urine, and that the container is closed. And there is testimony that all four of those provisions occur, actions occurred. One of the points I think that counsel was making is the defendant actually held the jar or container in his hand and there was nothing, no glove, no anything else. Why wasn't there some precaution to make sure that the container stayed dry and clean? I don't believe that there's any testimony that it was not dry and clean. In fact, the regulations don't require that there is a gloved hand by the defendant holding it for the urine specimen. So there is compliance with those, with what the administrative regulations require. And I'm assuming the police officers had gloves. Yes, and there was testimony both by Officer Filer and Officer Perry that gloves were used when they broke the plastic seal to open up the container and then cracked open the, I believe the specimen cup had a, I'm trying to think of this, a sticker, I'm trying to remember what the, when they opened it and handed it to the defendant. And they also used gloves when there was a swab on the, the defendant used a swab to swab himself before he issued the, before he gave a specimen. But I believe that the court's ruling on this is, really addresses a lot of Your Honor's questions today to opposing counsel, which was, you know, it was a small leak. It was not a large leak. And I do think that there's a difference between leak and small leak. And here there is testimony as to what the nature of the leak was. And more importantly, the forensic scientist testified that this leak would not have any impact on the integrity of the test results, which is one of the main provisions that we look to. Your opponent suggests that perhaps the outside of the bag, or the inside of the bag, may have contaminated the urine. Was the urine that was in the bag put back into the container? There's, there's no record on that. But there is record from the forensic scientist who did the testing, and the lab did the testing, said that this leak would not affect the reliability, the integrity of the test results. And I, you know, I, there was a lot of discussion, by Your Honors, of people, this court's opinion, of people at the hall. And in that case, the reason why there was no compliance found was that there was testimony that the actual regulation that wasn't complied with, the lack of preservative in the blood, went to the scientific basis for that requirement. And that is, that would be an inquiry into what the scientific basis and the integrity of that test result. We don't have that here. We have a small leak that the forensic scientist testified that that would not affect the integrity of the results. So therefore, any potential issue or small violation, you know, is de minimis, and there was substantial compliance with the state, with the regulation. So therefore, it was reliable and admissible. What is your position regarding the defendant's argument that in order to prove the defendant guilty under A-4, you have to prove that it was that particular or combination of particular drugs? Or some drug. You know, I would submit that there is specific drugs here. CNS depressants and narcotic analgesics, also with cannabis in his system. So, I mean, it is true that there is no generic DUI, but this is not a generic DUI. We have a DRE expert testifying of specific types of drugs in the system that she believed he was under the influence on. Yes, it's true that there is no named drug, Xanax, Vicodin. But the DRE expert did testify on page 179 that the CNS depressants include things like Xanax, and a narcotic analgesic includes things like Vicodin or heroin. So I would submit that there is specific drugs listed in the testimony. The fact that there is no medical evidence that says that doesn't mean that there wasn't a specific drug shown. And, you know, case law says that the testimony of an arresting officer is sufficient to prove DUI. And here we have the testimony of an arresting officer plus a DRE expert who testified at length of the 12-step process that she went through to determine whether or not the defendant was under the influence of any sort of drug. Well, you, I think, would have to admit that without that DRE expert, it would be hard to prove this case. Hard to prove in terms of an A4? Yes. Yes, because the arresting officer said he did not have that expertise, which is why he called in the DRE expert. The officer on the scene testified that he believed he was under the influence of something. And I believe on page 27 of my brief, I cite to a number of actual snippets from People's Exhibit 3 and People's Exhibit 8, which is the booking room video and the squad card video. And it is apparent from the video that the defendant had impairment. He was unable to perform the walk and turn test. In fact, the squad card video, what shows is that the officer is attempting to give him a one-legged stand test. And instead of performing the one-legged stand test, he again attempts to try to perform the walk and turn test again, such that the officer terminated the field sobriety test because he was not able to comply with the officer's instructions. And then at a later time, it is true that the officer gives him a breath test, and they blow a .00, but the officer, believing it based on what he saw and what had transpired, that he is clearly impaired and under the influence. So he calls in someone who has an expertise, which defendant at trial testified to, which is that the DRE expert is an expert in training and expertise in drug recognition, which is exactly what she did. She did a 12-step process, which was lengthy based on the squad, the booking room video, of the steps that she took to determine what he might have been impaired under. And in fact, she found two types of drugs, CNS depressants and narcotic analgesics, which is specific drugs such that it would prove for an aid. With respect to the finding of the guilty on the Naperville case, don't you agree that the case was not up for trial? Yes. And we have no choice but to vacate that conviction, do we? I would agree, Your Honor. I believe that the State said that they were not under, that they were not going on that time. I would note that it appears everyone at the trial, you know, there was no mention to the trial court, hey, this was not. The judge? Yeah, there was, you know. I did note, Your Honor, that the trial began on September 27th, and then it was continued a month later. And so I'm not sure if there was just an oversight or whatnot, but it wasn't a one-day thing. The defendant was not given any notice that this was going to be for trial, so we have no choice but to vacate it. The question is, did Jeopardy attach? No, Your Honor. There was no jury waiver. There was no jury waiver signed by the defendant, and it was a bench trial. No witnesses were sworn in. No witnesses were sworn in. And in fact, everyone was under the impression that it was not for trial. Would the testimony that came in in that case that should not have come in taint the conviction in this case? No, Your Honor. The two cases, the incidents that arose in these two cases occurred in a very short period of time. In fact, it was the same driving of the defendant. So even if that case was not on trial, the people would have, and I believe the court would have agreed that it was certainly relevant evidence as to impairment of the defendant's driving ability. And in fact, it shows that he, I think it was, and I apologize, I'm not 100% certain. I believe it's within 20 minutes of the first accident, the second accident occurs. And I believe Justice Burkett, as you mentioned, you know, it's the same course of driving, and because we are on an A4, which is impairment, we do have to show that he is incapable of driving safely. And I believe two accidents, one of which the defendant did not know whether or not he hit a person or a car, is certainly evidence and relevant towards the defendant's ability to drive safely. For the reasons that we set forth in our brief regarding the rules of admissibility, 702 and 603, I believe we would stand on the arguments we raised in our brief. If there are no other questions, we'd ask that the court respectfully affirm the defendant's condition. Thank you. Thank you. Mr. Marucci, would you follow me? Yes. Thank you very much. I think he's supported this. I want to address a couple of the items that were just addressed by the opposing counsel. This, the idea that there was substantial compliance here, on behalf of Mr. Lenz, I have some problem with that. One of the, in fact, the main process mandate in section 1286.330 that the defendant asserts on his behalf is found in subparagraph A. It states, a sample here shall be collected in a manner to ensure the integrity of the sample. Ebert, in Ebert, this court found that these standards exist not for their own sakes, but in service of the truth-seeking function, which they promote by ensuring that blood, breath, and urine tests are conducted in a manner that produces reliable results. The standards are to serve this purpose. The rule of substantial compliance must be one that neither blithely ignores the standards nor enforces them in a purely rote matter. In Ebert, the court found, this court found, a substantial compliance with regard to a requirement in a breath test that there be a 20-minute observation period. The defendant, in that case, went to the bathroom during the period, but testified that he didn't put anything in his mouth, eat, drink, or take. And so the court found that it would not serve justice to deny the introduction of a breath test result. Here, the State admits that there was a small, quote-unquote, small leak. Well, how, I mean, I'm still, I read the briefs, I read some of the transcript about this. How does the leak outside, when the seal is still unbroken, how does that contaminate what was inside that was tested? Well, it's impossible to reconcile the two facts that you just presented, Your Honor. In other words, the liquid urine sample, the forensic sample, couldn't leak out if the tape and the seal was intact. It obviates that the seal was not intact. There was a breach. And so it went out of the container and, therefore, had the opportunity to touch the outside of the container, decontaminate it, or the inside of the bag, and potentially re-enter the container through the same breach. That's all conjecture, would you agree? It's complete conjecture, but for the State, we have no ability to, the defendant has to rely on the government complying with these rules that they promulgated in order to protect him. Let's say, for the sake of argument, that we were to find that the standards were not complied with because of the leak. How would that affect the trial court's finding of the defendant's guilt on the A-4? Because he did not find the defendant guilty specifically. The per se count, it would affect the per se count, but no judgment was entered on the per se count because it was merged with this count, and he was sentenced only on A-4. I understand. So how would it affect A-4? Your position is that you've got a strong case on A-4, so we can't fall back to the per se because of the violation. Is that the summary of your position? A-4 falls because there's no specific evidence of the combination of drugs that the expert testified to other than the impairment on the video, and we cannot fall back and enter a conviction on per se because the standards weren't complied with. Is that your position?  With regard to the A-6, if the court doesn't support the rule that says the forensic sample has to have integrity through the time of testing, there's really no reason to have standards at all. So that's our position with regard to the A-6. And with regard to the A-4, just to rebut that very briefly, it's more important, Mr. Lenz, not that, although I think it's important, it would show a greater depth to the expert's opinion if she were able to name a drug, that he took this drug, and the fact that she can't obviates the fact that there's no other direct or circumstantial evidence supporting her opinion. There's no admission to a drug which would be direct evidence. There's no direct evidence from a blood sample that they could have taken. There's no direct evidence from the urine sample. There's no circumstantial evidence that they found pills in his car or pills on his person. He denied taking any drugs at all. So she's left. When you say he denied, was that in the record? Yes. Did he testify? He didn't testify. He didn't, but his statements came in through Officer Mabbitt and I believe also through Officer Filer. But the drug recognition expert asked him repeatedly, in fact, did you take drugs? Can I finish up very briefly? Yes. What's more important than naming a specific drug is the fact that there's no support for the opinion that he must have ingested these drugs by virtue of the way he looks. And, again, my research hasn't found any case where an expert's opinion, even a qualified expert's opinion, standing alone without any other circumstantial or direct evidence to support it other than the observations of the test. Well, you can't – in your brief you say there was no other evidence. Now you've acknowledged there is clear evidence of impairment, correct? That's leaving something out. What's that leaving out? That there is no – there is no – No proof of the other drug other than the impairment, is that your point? It has to be alleged alcohol compounds, intoxicating compounds, drugs, or some combination of that, and they have to exclude the possibility that there's some other reason for the observations. The defendant's performance on tests, the opinion on what that's – why he performed the way he performed, his circumstances. Where is the case law that says the State has to exclude other possibilities? There is no such thing. Isn't that your burden? I mean, it's – if your client wants to raise a defense as to why his driving was as it was, isn't it your burden to release that? I would submit that it is not, that the State has the burden to prove my client guilty beyond reasonable doubt of the evidence charged. Or did – it's the burden of the State to disprove every other possibility? No. And I don't – I really don't mean to intimate that. But I do mean to say that the State's case is stronger when we're able to tie up those ends, and here they were not able to validate the experts' opinion in any way other than the – they weren't able to validate that he ingested those drugs. One final question. The State agrees that the Naperville case that was not up for trial has to be vacated, and you acknowledged no witnesses were sworn in that case. So how is your client prejudiced at all, other than the delay in having to wait now while this case has been on appeal for that case to go to trial? Is there any other prejudice besides the delay? He's been sentenced, and he's served a sentence to a certain extent. Okay. Whatever the sentence was on that, on those charges, he served that sentence. Okay. Thank you, Mr. Marsh. Thank you. Thank both parties for the quality of your arguments today. A written decision will be issued in due course. Court stands in recess.